The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: September 8 2014

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Case No. 12-34278 |
| | ) | |
| Jodi L. Wright | ) | Chapter 7 |
| | ) | |
| Debtor(s) | ) | |
| | ) | **JUDGE MARY ANN WHIPPLE** |

### MEMORANDUM OF DECISION ON DEBTOR'S MOTION FOR CONTEMPT

This case is before the court for decision after an evidentiary hearing on Debtor's Motion for Contempt Against Barclaycard US for Violation of the Discharge [Doc. # 53] ("Motion").

This court has jurisdiction over Debtor and Movant Jodi L. Wright's Chapter 7 case pursuant to 28 U.S.C. § 1334(a). Her Chapter 7 case and all proceedings therein have been referred to this court for decision under the general order of reference entered in this district. *See* 28 U.S.C. § 157(a)(1). Proceedings relating to adjustment of the debtor-creditor relationship, such as enforcement of the Chapter 7 discharge, and this court's own orders are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(O); *cf.* 28 U.S.C. § 157(b)(j).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P.

1

7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the hearing witness, considered all of the evidence, and reviewed the entire docket and record of Debtor's Chapter 7 case and a related adversary proceeding.[1] Based upon that review, and for the reasons discussed below, the court finds Barclaycard US/RCI Elite in civil contempt of this court and that as sanctions for contempt it must pay Debtor $117.15, take steps to repair any erroneous credit reporting on its part and pay Debtor a civil fine of $1,000.00, subject to abatement if it timely takes the other steps required by the court.

Debtor filed her petition for Chapter 7 bankruptcy relief on September 19, 2012. On her Schedule F, she listed Bank of America, at PO Box 982235, El Paso, TX 79998 as a general unsecured creditor with a claim of $7,082.44. [Doc. # 1, p. 15/45 and 38/45]. On January 23, 2013, FIA Card Services, N.A., as successor in interest to Bank of America, N.A. (USA) and MBNA America Bank, N.A., filed a proof of claim for $7,122.24. On April 26, 2013, the docket, [Doc. ## 20, 21], and claims register in this case show that Claim No. 1 for $7,122.24 was transferred to RCI Elite.

On November 5, 2013, the Chapter 7 Trustee filed an adversary complaint against Bank of America seeking avoidance of a preferential transfer from the Debtor in the amount of $6,120.39. [Adv. Pro. No. 13-3169]. In the adversary proceeding, a representative of Bank of America communicated to the Plaintiff-Trustee and the court that Bank of America had transferred the account to Barclay's and that Barclay's intended to pay the preference amount to the Trustee. [*Id.*, Doc. ## 14-15]. The Trustee's Final Account shows that he received a $6,120.39 preference recovery payment and the adversary complaint was therefore dismissed on March 24, 2014. [Doc. # 29, pp. 3-4/9; *see also A*dv. Pro. 13-3169, Doc. # 17]. The Trustee distributed $993.13 to RCI Elite on account of the claim transferred from Bank of America to FIA Card Services and from FIA Card Services to RCI Elite. [Doc. # 29, p. 8/9; Doc. # 60, p. 5/9].

In the meantime, Debtor had received her Chapter 7 discharge on January 9, 2013. [Doc. ## 15, 17]. Notice of Debtor's Chapter 7 discharge was mailed on January 11, 2013, to Bank of America at the address in the schedules, [Doc. # 17], with the court docket not showing any returned mail from it.

---

[1] The court takes judicial notice of the contents of its case dockets and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

Debtor filed her motion for contempt against Barclaycard US/RCI Elite on July 14, 2014. [Doc. # 53]. It was served on Barclaycard US by first class United States mail, postage prepaid, at 125 S. West Street, Wilmington, DE 19801. The court set the Motion for hearing to occur on August 21, 2014, by order dated July 28, 2014. [Doc. ## 58-59]. The hearing order was sent by the Bankruptcy Noticing Center by first class United States mail, postage prepaid, to Barclaycard US at the service address used by Debtor. The hearing order was also sent by the Bankruptcy Noticing Center by first class United States mail, postage prepaid, to RCI Elite at 4161 Piedmont Parkway, NC4 105 03 14, Greensboro, NC 27410, which is the address in the claim transfer documents. The court has not received any return mail of the hearing order.

The court held the contempt hearing on August 21, 2014. Debtor and Attorney for Debtor appeared in person at the hearing. There was no appearance on behalf of Barclaycard US/ RCI Elite and no response to the Motion has been filed with the court. Debtor testified at the hearing and the court admitted three documents as evidence.

Debtor submitted a Bank of America statement dated August 2, 2012, showing $6,120.39 in pre-petition payments to Bank of America. [Hearing Ex. A]. This is the payment amount the Trustee avoided as a preference. The evidence shows that after Barclay's repaid Trustee Dymarkowski the $6,120.39 preference amount, Barclaycard US/RCI Elite immediately charged Debtor for an Official Check in the amount of $6,120.39 that it had sent to the Trustee. Hearing Exhibit B is an RCI Elite Rewards World MasterCard Statement showing a payment due date of May 1, 2014. It is in the name of Mrs. Jodi L. Wright for a so-called primary account number ending in 0945. The amount of $6,120.39 is shown as a "purchase" by Debtor on March 18, 2014. The first statement also adds interest to the account of $60.65 and requires that a payment be made by May 1, 2014. Debtor then received another statement on the "account." Exhibit C is a statement on the same account with a payment due date of June 1, 2014. This statement has added a late payment fee of $25.00 as well as additional interest in the amount of $102.48, for a total amount alleged due of $6,308.52.

Debtor credibly testified that she neither requested nor applied for such an account and did not herself purchase any Official Check from Barclay's. It is clear by comparison with the court record in both the main Chapter 7 case and the adversary proceeding that this is for and the exact amount that was paid to the Chapter 7 Trustee on account of his preference complaint.

On her own, Debtor called customer service and informed the Barclaycard US/RCI Elite agent of her bankruptcy case, that this amount represents a discharged debt, and that she does not want and has no responsibility for this account. She got nowhere. After her first call, which occurred

3

12-34278-maw    Doc 63    FILED 09/08/14    ENTERED 09/08/14 16:01:02    Page 3 of 7

immediately upon receipt of Exhibit B, she was told somebody would look into it and get back to her. Nobody ever did. She called again after she received Exhibit C, now alleging a past due amount and a late fee, and again informed the representative of her bankruptcy and the discharge. And again, the problem was not addressed. As a result, counsel filed the Motion for Debtor.

The bankruptcy court's contempt powers flow from Bankruptcy Code § 105(a) and the inherent power of a court to enforce compliance with its lawful orders. 11 U.S.C. § 105(a); *see Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000). In addressing a contempt request, a court must consider three issues: (1) did the responding party receive appropriate notice of the alleged contempt; (2) did the acts or failures to act constitute contempt; and (3) if so, what is the appropriate consequence for that contempt. *In re Walker,* 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001).

The first issue is whether Barclaycard US/RCI Elite received appropriate notice of the alleged contempt. Bank of America received the initial notice of Debtor's Chapter 7 bankruptcy case and her discharge. [Doc. # 17]. As shown by the claims register in this case, and the transfer of the original Bank of America Claim No. 1 to it, Barclaycard US/RCI Elite was aware of the bankruptcy case at least as of April 26, 2013. The court therefore finds that Barclaycard US/RCI Elite had knowledge of Debtor's bankruptcy case and is charged with constructive notice of her bankruptcy discharge, both as the successor in interest to Bank of America and on its own account as a result of the claim transfer. Moreover, even if these circumstances were insufficient to charge Barclaycard US/RCI Elite with notice of Debtor's bankruptcy discharge, it had direct notice of it after Debtor spoke twice with its customer service representatives and directly informed them of her bankruptcy case, her Chapter 7 discharge and the problem with setting up an unauthorized credit card account in her name and charging her for discharged debt. The court therefore finds that Barclaycard US/RCI Elite and its authorized representatives had due and proper notice of the order in issue ( Debtor's Chapter 7 discharge), of the acts alleged to constitute contempt, of the Motion and of the hearing on the Motion, satisfying the first element of proof.

The second issue is whether Barclaycard US/RCI Elite's acts constitute civil contempt of court. "The primary purpose of a civil contempt order is to 'compel obedience to a court order and compensate for injuries caused by non-compliance'." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000)(quoting *TWM Manuf. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983)). The party alleging contempt has the burden of establishing by clear and convincing evidence that the responding party violated a definite and specific order of the court requiring it to perform or

4

refrain from performing a particular act or acts with knowledge of the order. *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). As already noted above, Barclaycard US/ RCI Elite has knowledge of Debtor's discharge. Discharge orders in Chapter 7 bankruptcy cases are definite and specific, with the prohibitions arising therefrom set forth by statute. 11 U.S.C. § 524(a). Debtor's Exhibits A-C and her testimony prove a violation of the discharge injunction. The amount repaid to the Trustee on account of his preference complaint recovery became part of the pre-petition debt on the original Bank of America account. Under § 502(h), "[a] claim arising from recovery of property under section...550...of this title shall be determined, and shall be allowed...or disallowed...the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h). As a pre-petition debt, any preference amount and recovery was discharged when Debtor received her Chapter 7 discharge, even though the Trustee has not yet pursued or recovered it. 11 U.S.C. § 524(a)(2). Barclaycard US/RCI Elite is thus trying to collect a discharged pre-petition debt from Debtor. Indeed it is hard to conjure a more blatant example of an effort to collect a pre-petition debt in violation of the discharge injunction than the one proven by Debtor. Barclaycard/RCI Elite has set up a new, unauthorized credit card account in Debtor's name in which it has begun dunning her for the preference recovery payment to the Chapter 7 Trustee, exacerbated by charging her interest and late payment fees on top of that amount. The court therefore finds that Debtor has met her burden of showing by clear and convincing evidence that Barclaycard US/RCI Elite has violated the discharge injunction entered in Debtor's Chapter 7 case on January 9, 2013. [Doc. # 15].

Once the contempt is proven, the final issue to be addressed is the appropriate consequence to the contemnor. There are two kinds of fines that may imposed for civil contempt at the court's discretion. *See Redken Lab. v. Levin*, 843 F.2d 226, 229-30 (6th Cir. 1988)(trial court's sanction was not an abuse of discretion). The first is intended to compensate for damages caused by the responding party's noncompliance and must be based on evidence of actual loss. *United States v. Bayshore Assocs.*, 934 F.2d 1391 (6th Cir. 1991). The second is a coercive fine, with the responding party able to avoid paying the fine by performing the act required by the court's order. *Id.*

Debtor testified that she had to miss work for 4 hours to attend the court hearing. She is paid $16.50/hour, for a total of $66.00. She had to travel 90 miles round trip to Toledo for the hearing, for an additional amount of $50.40 at the federal reimbursement rate of .56 cents/mile. She also incurred parking charges in downtown Toledo of .75 cents. The court finds that Debtor's out of pocket costs of $117.15 associated with attending the court hearing on the Motion constitute actual loss to her

5

resulting from the contempt. [2] She is entitled to be compensated for that loss.

The court also finds that, in order to fully compensate Debtor for the consequences of violation of the discharge injunction in Debtor's case, Barclaycard US/RCI Elite must also take steps to address the credit reporting consequences to Debtor of its actions and the accompanying impact on her fresh start. These steps must be taken within 45 days after entry of the court's order in this action.

Lastly, Debtor's motion also requests as sanctions for contempt punitive damages. Sanctions for civil contempt are intended either to compensate a party for loss due to noncompliance with a court order or to coerce compliance. *McMahan & Co.*, 206 F.3d at 634. Punitive damages, however, are intended to punish conduct. *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S.299, 307 n. 9, 106 S. Ct. 2537, 2543, 91 L.Ed. 2d 249 (1986). Punitive damages are therefore not available as a sanction for civil contempt. *Costa v. Welch (In re Costa)*, 172 B.R. 954, 964 (Bankr. E.D. Ca. 1994); *see Downey v. Clauder*, 30 F.3d 681 (6th Cir. 1994)(explaining differences between civil contempt and criminal contempt). *But cf. In re Perviz*, 302 B.R. 357, 372-73 (Bankr. N. D. Ohio 2003)(awards punitive damages on contempt for violation of the discharge injunction). While the court thus will not award Debtor punitive damages, the court does find it appropriate to impose a civil fine on Barclaycard US/RCI Elite to coerce its compliance with this order, and that the fine should be payable to Debtor.

A fine is necessary given the nature of contemnor's disregard of the bankruptcy process displayed in this case and its failure to respond to Debtor's efforts to solve the problem on her own before bringing it to court. The appropriate amount of the fine in the court's view is $1,000.00. Under the circumstances of this case the court finds that the fine would appropriately be paid to Debtor and not to the court. The court arrived at this amount as approximately 10 times the direct compensatory damages Debtor has incurred to date from the contemptuous conduct of Barclaycard US/RCI Elite and also the approximate amount it was paid on account of its claim by the Trustee. This fine will be subject to abatement if Barclaycard US/RCI Elite timely takes the other steps required by the court's

---

[2] Attorney's fees would also be appropriate compensation to Debtor given her efforts to get the problem resolved on her own before having to contact counsel to deal with it. *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d at 634. However, counsel indicated that she did not intend to charge Debtor for the Motion proceedings, as Debtor is a former employees of hers. Should the contemnor not adequately and properly respond to the instant order and further court proceedings be required, or should there be further instances of contempt after the date of this order necessitating further court intervention to solve the problem, the court would expect that counsel will keep track of her time for purposes of a compensatory award of attorney's fees and costs.

decision on the Motion.

A separate court order granting Debtor's Motion for Contempt Against Barclaycard US for Violation of the Discharge [Doc. # 53] in accordance with this memorandum of decision will be entered by the court.

###